

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

ENTERED
10/05/2009

................................................x

In re:                :      Chapter 11

                      :

EDGE PETROLEUM CORPORATION, *et al.*    :      Case No. 09-20644

                      :

       Debtors. [1]          :

................................................x

### AGREED INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS' INTERIM AND FINAL USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING REGARDING USE OF CASH COLLATERAL

On October 5, 2009, the Court considered the Debtors' Emergency Motion for an Order (i) Authorizing the Debtors' Interim and Final Use of Cash Collateral; (ii) Granting Adequate Protection; and (iii) Scheduling a Final Hearing Regarding Use of Cash Collateral  Docket No. [___] (the "Motion")[2] filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors").

## I.    FINAL CASH COLLATERAL HEARING

A final hearing on the Motion shall be held on [ 10|27 __ ], 2009, at 2 : 00 P.m.] (the "Hearing"), before the Honorable Richard S. Schmidt, United States Bankruptcy Judge, at the United States Bankruptcy Court, 1133 N. Shoreline Blvd., 2nd Floor, Corpus Christi, Texas 78401.  Objections to the relief requested in the Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the following parties so that any such objections are received on or before 4:00 p.m. (prevailing Central time) on October __, 2009:

---

[1] The Debtors are Edge Petroleum Corporation; Edge Petroleum Exploration Company, LLC; Miller Exploration Company, LLC; Edge Petroleum Operating Company, Inc.; Edge Petroleum Production Company; and Miller Oil Company.

[2] Capitalized terms not defined herein shall have the meanings given to them in the Motion.

*Proposed Counsel for Debtors:*

Charles R. Gibbs
Sarah Link Schultz
Yewande A. Akinwolemiwa
**Akin Gump Strauss Hauer & Feld LLP**
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Fax: 214-969-4710
cgibbs@akingump.com
sschultz@akingump.com
yakinwolemiwa@akingump.com

Shelby A. Jordan
Nathaniel Peter Holzer
Harlin C. Womble
**Jordan, Hyden, Womble, Culbreth &
Holzer, P.C.**
500 N. Shoreline Blvd., Suite 900
Corpus Christi, TX 78471
Fax:  361-884-5678
sjordan@jhwclaw.com
pholzer@jhwclaw.com
hwomble@jhwclaw.com

*Counsel for the First Lien Lenders:*

William A . "Trey" Wood III
**Bracewell & Giuliani LLP**
711 Louisiana Street
Suite 2300
Houston, TX 77002-2770
Fax: 713-221-1212
Trey.Wood@bgllp.com

## II.   <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Having considered the Motion, evidence proffered or presented, and arguments of counsel, after due deliberation, for good and sufficient cause, the Court hereby finds and concludes as follows:

### <u>Jurisdiction and Venue</u>

A.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O).  Venue is proper in this district pursuant to 28 U.S.C. § 1409.

**Notice**

B.      Under the circumstances, the notice given by the Debtors of the Motion and the interim hearing thereon constitutes due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and the applicable local rules of this Court.

**Opportunity to Object**

C.      Except pursuant to Bankruptcy Rule 4001(d)(2) and with respect to the stipulations regarding the Pre-petition Lenders' claims, documentation and existence of the Pre-petition Lenders' debt and existence and perfection of the Pre-petition Lenders' liens, any objection to the entry of a final order granting the Motion, must be filed within fifteen (15) days of the date of mailing hereof to those parties required under Bankruptcy Rule 4001(d)(1). Objections to the stipulations regarding the Prepetition Lenders' claims, documentation, and existence of the Prepetition Lenders' debt and existence and perfection of the Prepetition Lenders' liens, as provided below, by all parties in interest in this jointly administered bankruptcy case, must be filed within 45 days following the date of the entry of this Interim Order. The mailing of a copy of this Interim Order by first class mail, postage prepaid, on those entities required under Bankruptcy Rule 4001(d)(1) shall be deemed to constitute compliance with the applicable notice provisions of Bankruptcy Rule 4001 regarding agreements for use of cash collateral and relief from the automatic stay.

**Factual Background**

D.      On October 1, 2009 (the "Petition Date"), Edge Petroleum Corporation, a Delaware corporation ("Edge"), as well as various Edge subsidiaries, filed petitions pursuant to

chapter 11 of the Bankruptcy Code with this Court. The Debtors continue to operate their businesses pursuant to Bankruptcy Code sections 1107(a) and 1108.

      E.     The Debtors are independent energy companies engaged in the exploration, development, acquisition and production of natural gas, natural gas liquids and crude oil. The Debtors' operations are focused onshore in the United States, primarily in South and Southeast Texas, Southeast New Mexico, Mississippi, Arkansas and Louisiana. As of December 31, 2008, 83% of the Debtors' proved reserves were in Texas, 6% were in Mississippi, 6% were in New Mexico and 5% were in south Louisiana, Michigan, Alabama and Arkansas, collectively.

      F.     In January 2007, the Debtors entered into a credit agreement (the "Credit Facility") with Union Bank of California as agent and issuing lender (the "Pre-petition Agent") and other lenders party thereto (collectively and together with the Pre-petition Agent, the "Pre-petition Lenders"). The Credit Facility provided for a $750 million revolving credit facility, with an initial borrowing base of $320 million. The Credit Facility is secured by liens and security interests in substantially all of the Debtors' oil and gas properties and contains covenants, restrictions and events of default that are customary for similar facilities, and provides that each subsidiary is a guarantor of the obligations incurred under the Credit Agreement. The Credit Facility originally matured on January 30, 2011, but has since been amended to provide for a September 30, 2009 maturity date. As of September 30, 2009, $226.5 million in total borrowings were outstanding under the Credit Facility.

      G.     The borrowing base under the Credit Facility was subsequently reduced to $300 million in December 2007 and to $250 million in May 2008. The Pre-petition Lenders agreed to defer conducting a borrowing base redetermination, originally scheduled for June 30, 2008, until October 31, 2008. On November 5, 2008, the Pre-petition Lenders agreed to defer conducting

the borrowing base redetermination from October 31, 2008 until November 15, 2008. As consideration for this deferral, the Pre-petition Lenders placed a restriction on the Debtors' borrowing base, reducing it from $250 million to $240 million and effectively reducing the Debtors' available borrowing capacity under the Credit Facility from $11 million to $1 million, at which time $239 million in total borrowings were outstanding under the Credit Facility.

H.      On January 8, 2009, the Pre-petition Lenders notified the Debtors that the borrowing base was being reduced from $240 million to $125 million, resulting in the aggregate principal amount of advances outstanding under the Credit Facility exceeding the Debtors' borrowing base by approximately $114 million. As a result, and pursuant to the terms of the Credit Facility, the Debtors were required to take one or more of certain actions to timely eliminate such deficiency, including prepaying the borrowing base deficiency (with prepayments to be made in six equal monthly installments) or pledging additional oil and natural gas properties as collateral. The Debtors elected to prepay the borrowing base deficiency in six equal monthly installments, with the first $19 million installment being due on February 9, 2009.

I.      Both prior to and after this borrowing base redetermination, the Debtors evaluated strategic alternatives, including a capital restructuring. To assist in analyzing various financial and strategic alternatives, the Debtors retained the investment banking firm Parkman Whaling LLC ("Parkman Whaling") and the law firm Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") to represent the Debtors generally as their primary outside counsel.

J.      In a consent and agreement dated February 9, 2009, the Debtors and Pre-petition Lenders agreed to defer the payment of the first $19 million installment to reduce the borrowing base deficiency until March 10, 2009, and to extend the due date of each subsequent installment by one month. The last of the six installment payments would be due and payable on August 10,

2009.  In addition, the Debtors agreed to prepay $5 million of the outstanding advances under the Credit Facility in two equal installments.  The first $2.5 million was paid on February 9, 2009 and the second $2.5 million prepayment was paid on February 23, 2009.  Each of the prepayments was to be applied on a pro rata basis to reduce the six $19 million deficiency payments.  In a second consent and agreement dated March 10, 2009, the Debtors and the Pre-petition Lenders agreed that the first $19 million installment to reduce the borrowing base deficiency would be due and payable on March 17, 2009.

K.     On March 16, 2009, the Debtors and the Pre-petition Lenders entered into that certain Consent and Amendment No. 4 to the Credit Facility, whereby the Debtors agreed (i) to repay $25 million of the outstanding advances under the Credit Facility, together with any accrued interest, on or before May 31, 2009 and to repay all remaining outstanding advances and accrued interest on or before June 30, 2009; and (ii) that it would be an event of default if the Debtors failed to enter into, on or before May 15, 2009, an agreement that would result in proceeds sufficient to repay the Debtors' obligations under the Credit Facility on or before June 30, 2009.

L.     On May 15, 2009, the Debtors and the Pre-petition Lenders entered into that certain Amendment No. 5 to the Credit Facility, which provided for the elimination of the provision in the Credit Facility that provided for an event of default if the Debtors failed to enter into, on or before May 15, 2009, an agreement that would result in a sufficient amount to repay all of the Debtors' obligation under the Credit Facility on or before June 30, 2009.

M.     On May 29, 2009, the Debtors and the Pre-petition Lenders agreed in that certain Amendment No. 6 to the Credit Facility to eliminate the May 31, 2009 payment obligation, with

such payments together with all remaining principal and interest payments to be due on or before June 30, 2009.

N.    On June 30, 2009, the Debtors and the Pre-petition Lenders agreed in that certain Amendment No. 7 to the Credit Facility to eliminate the June 30, 2009 payment obligation and to require: (i) a payment of $1,142,753.42 to be due on or before June 30, 2009; (ii) a payment of $7.5 million to be due on or before July 10, 2009; and (iii) all remaining principal and interest payments to be due on or before July 31, 2009.

O.    On July 31, 2009, the Debtors and the Pre-petition Lenders agreed in that certain Amendment No. 8 to the Credit Facility to eliminate the July 31, 2009 payment obligation, with such payments together with all remaining principal and interest payments to be due on or before August 31, 2009.

P.    On August 31, 2009, the Debtors and the Pre-petition Lenders agreed in that certain Amendment No. 9 to the Credit Facility to change the date on which all remaining principal and interest payments would be due from August 31, 2009 to on or before September 30, 2009.

**Pre-petition Lenders' Claims**

Q.    The Pre-petition Lenders assert that as of the Petition Date they held valid, enforceable, and allowable claims, as defined in Bankruptcy Code section 101 in the amount of $227,570,445.21.  This Interim Order shall constitute evidence of the alleged amount and nature of each of the Pre-petition Lenders' claims (as set forth below) in these cases and the Pre-petition Lenders may, but shall not be obligated to, amend, or supplement this proof by filing a proof of claim in this case.  Subject to the provisions of paragraphs 14 and 28 herein, the Debtors

stipulate and acknowledge that the Pre-petition Lenders hold valid, enforceable, and allowable claims, as defined in Bankruptcy Code section 101 in the amount of $227,570,445.21.

R.      Pursuant to the Credit Agreement, the Pre-petition Agent asserts that the Debtors are indebted to the Pre-petition Lenders in an amount not less than $226.5 million, which represents the principal amount of loans made pursuant to the Credit Agreement, plus accrued and unpaid interest and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations under the Credit Agreement (collectively, the "Pre-petition Obligations"). Subject to paragraphs 14 and 28 herein, the Debtors stipulate and acknowledge that the Pre-petition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and that no portion of the Pre-petition Obligations or any amounts paid to the Pre-petition Lenders or applied to the obligations owing under the Credit Agreement prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as that term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

S.      The Pre-petition Agent and the Pre-petition Lenders further assert that the Pre-petition Obligations are secured by first-priority, valid, binding, perfected and enforceable liens and security interests (the "Pre-petition Liens") granted by the Debtors to the Pre-petition Agent, for the benefit of the Pre-petition Lenders, under the Credit Agreement and other documents executed in connection therewith, including, but not limited to, any notes, letter of credit documents, security interests, mortgages, guarantees, or other agreements or instruments, (all of the foregoing, together with the Credit Agreement, referred to as the "Pre-petition Indebtedness Documents") upon and in all of the assets and property of the Debtors whether then owned or

thereafter acquired or arising, and all proceeds and products thereof, and all of the equity interests and all related rights with respect to the Debtors (collectively, the "Pre-petition Collateral"). Subject to the provisions of paragraphs 14 and 28 herein, the Debtors stipulate and acknowledge that the Pre-petition Obligations are secured by the Pre-petition Liens upon the Pre-petition Collateral. Subject to paragraphs 14 and 28 herein, the Debtors further stipulate and acknowledge that the Pre-petition Liens upon the Pre-petition Collateral are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

T.     Subject to paragraphs 14 and 28 herein, the Debtors waive any right to contest the amount of, or to assert any defense, counterclaim or offset with respect to the Prepetition Obligations or the validity, priority, or enforceability of the Prepetition Liens on the Prepetition Collateral.

U.     The Pre-petition Agent and the Pre-petition Lenders further assert that all of the cash of the Debtors in existence on the Petition Date and that is acquired by the Debtors thereafter constitutes cash collateral (the "Cash Collateral") within the meaning of Bankruptcy Code section 363(a) for the benefit of the Pre-petition Agent and the Pre-petition Lenders. Subject to the provisions of paragraphs 14 and 28 herein, the Debtors stipulate and acknowledge that the all of the cash of the Debtors in existence on the Petition Date and that is acquired by the Debtors thereafter constitutes Cash Collateral for the benefit of the Pre-petition Agent and the Pre-petition Lenders.

**Binding Agreement**

V.     The agreements and arrangements authorized in this Interim Order have been negotiated at arms-length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. The Pre-petition Lenders, the Pre-petition Agent and the Debtors have acted in good faith (including, without limitation, as that term is used in the Bankruptcy Code and otherwise) in the negotiation and preparation of this Interim Order, have been represented by counsel, and intend to be and are bound by the terms of this Interim Order.

**Limited Use of Cash Collateral**

W.     The Debtors require the continued use of the Cash Collateral of the Pre-petition Lenders in order to fund, among other things, their cash requirements for ordinary course business operations and to maintain the value of their bankruptcy estates and for other purposes permitted by this Interim Order. The Pre-petition Lenders and the Pre-petition Agent have acted in good faith by agreeing to permit the Debtors to use the Pre-petition Collateral including Cash Collateral, on an interim basis, on the terms and conditions provided for herein, commencing on the Petition Date and expiring on October [___], 2009 (the "Interim Period"). The Pre-petition Lenders and the Pre-petition Agent do not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in this Interim Order or as may be agreed to subsequent to the entry of this Interim Order.

X.     The Debtors have requested that the Pre-petition Lenders and the Pre-petition Agent agree to permit the use of Cash Collateral to provide funds to be used solely for such purposes set forth in the Interim Budget (as defined below) in order to avoid immediate and irreparable harm to the Debtors' bankruptcy estates which will occur if this Interim Order is not immediately approved.

Y.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors continued ability to obtain sufficient working capital and liquidity through the use of Cash Collateral is vital to the Debtors' estates and their creditors, so that the Debtors can continue to operate their businesses in the ordinary course, including preserving the jobs of their employees. Accordingly, authorization to use Cash Collateral in accordance with this Interim Order is in the best interest of the Debtors' estates, creditors, and employees. Thus, the Debtors' interim use of Cash Collateral is necessary to preserve the bankruptcy estates, and will avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets, prior to the expiration of the period specified herein.

### III.  ORDER

Accordingly, it is therefore **ORDERED** that:

1.     The Motion is granted on the terms set forth in this Interim Order.

2.     Any objections to the Motion or entry of this Interim Order that have not previously been resolved or withdrawn, including any reservations of rights therein, are hereby overruled on their merits.

3.     To the extent that any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

4.     This Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry.

5.     The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only as provided in accordance with the terms and conditions provided in this Interim Order.

6.     The Debtors shall be permitted to use Cash Collateral solely to pay the expenses described in the expenditures contained in the budget attached hereto as **Schedule 1** (the "Interim Budget") for the Interim Period, solely up to the amounts, at the times and for the purposes

identified in the Interim Budget.  The Debtors shall not, without the prior written consent of the Pre-petition Agent, use Cash Collateral with respect to any single week in the Interim Budget in an amount in excess of the aggregate amount budgeted for that week, provided however, that there shall be a permitted variance of 10% for any amounts listed in the Interim Budget for a particular line item.  The expenditures authorized in the Interim Budget shall be adhered to on a line-by-line basis, but any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week, on a line-item basis (*i.e.,* any unused amounts in a line item in a given week may carry over to that line item in a subsequent week or weeks).

7.      The Debtors and the Pre-petition Agent may extend the Interim Period, without further notice to creditors or order of this Court, provided that a Stipulation Extending Cash Collateral Order signed by counsel to the Debtors and counsel to the Pre-petition Agent is filed together with a copy of a budget if there are changes from the Interim Budget attached hereto as **Schedule 1**.

8.      Notwithstanding anything in the Interim Budget or this Interim Order to the contrary, the Pre-petition Lenders and the Pre-petition Agent reserve all rights to object to any motion, application, or other request for relief that relates to the items referred to or covered by the Interim Budget, subject to the provisions of this Interim Order.

**Termination Events/Remedies**

9.      Pursuant to Bankruptcy Rule 4001(b)(2), this is an Interim Order and will remain in effect until the earlier of (i) October [___], 2009, or (ii) upon any Termination Event (as defined below).  Termination of the Debtors' right to use Cash Collateral or termination of the automatic stay shall in no manner affect the validity, enforceability, or priority of the Adequate

Protection Liens (as defined below), Superpriority Claims (as defined below), or other protections afforded to the Pre-petition Lenders pursuant to the provisions of this Interim Order.

10.    If the Debtors' right to use Cash Collateral has not been previously terminated pursuant to the provisions of this Interim Order, such right may be extended only upon the Pre-petition Agent's written consent, or by further order of this Court. The Pre-petition Lenders and the Pre-petition Agent shall have absolutely no obligation to agree to such an extension under any circumstances and may elect or not elect to agree to such an extension as they determine in their sole and absolute discretion.

11.    The following shall each constitute a "Termination Event" under this Interim Order:

(a)    the passing of 5:00 p.m. (prevailing Central Time) on [_____ _____,] 2009 (or such later date as may be agreed to by the Debtors and the Pre-petition Lenders);

(b)    two (2) business days following the business day on which counsel to the Pre-petition Agent provides counsel for Debtor with written notice that the Debtors have failed to comply with any material terms of this Interim Order (which notice may be provided by email), and that failure has gone uncorrected;

(c)    entry of an order, without the prior written consent of the Pre-petition Agent, (i) converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (ii) dismissing any of these chapter 11 cases; (iii) appointing a trustee under chapter 7 or chapter 11 of the Bankruptcy Code or appointing an examiner with expanded powers (powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4) in any of these chapter 11 cases); (iv) reversing, vacating, or otherwise amending, supplementing or modifying this Interim Cash Collateral Order; or (v) granting relief from the automatic stay to any creditor holding or asserting a lien or reclamation claim;

(d)    except as permitted under this Interim Order, any proceeding that shall be commenced seeking (i) the invalidation, subordination, or other challenging of the Superpriority Claims or Adequate Protection Liens granted to the Pre-petition Lenders under this Interim Order or (ii) any relief under section 506(c) of the Bankruptcy Code with respect to the Pre-petition Collateral;

(e)     any application of any of the Debtors for entry of an order approving use of Cash Collateral (other than an application related to this Interim Order or any final Cash Collateral order), or any financing or loan secured by liens, which are senior, *pari passu*, or junior to the Pre-petition Lenders' liens on the Pre-petition Collateral, without the prior written approval of the Pre-petition Lenders;

(f)     the filing of a motion in these chapter 11 cases without the Pre-petition Lenders' prior written consent:  (i) to obtain financing under Bankruptcy Code section 364 from any person or entity other than the Pre-petition Lenders if such financing will not be used to satisfy in full all of the allowed secured claim of the Pre-petition Lenders; (ii) to grant any lien or offering any collateral; (iii) to recover from any portion of the Pre-petition Collateral any costs or expenses of preserving or disposing of collateral under Bankruptcy Code section 506(c); and

(g)     the termination of support obligations under the Plan Support Agreement.

**Adequate Protection**

12.     Each Pre-petition Lender is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364(d)(1), to adequate protection of its interests in the Pre-petition Collateral on account of the Debtors' use of the Pre-petition Collateral and any other diminution in value for any reason whatsoever, including, but not limited to, arising out of the automatic stay or the Debtors' use, sale, lease, depreciation, depletion, or disposition of the Pre-petition Collateral (each such diminution, a "Diminution in Value").

13.     As adequate protection to the Pre-petition Lenders for the aggregate Diminution in Value, the Pre-petition Lenders shall be and hereby are granted (effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or Pre-petition Lenders of mortgages, security agreements, pledge agreements, financing statement, or otherwise), the following:

(a)     <u>Adequate Protection Liens</u>.  To the extent of any Diminution of Value, the Pre-petition Lenders shall have valid and perfected additional and replacement security interests in, and liens upon (the "Adequate Protection Liens"), all of the Debtors' right, title and interest

in, to, and under (a) all assets in which the respective Pre-petition Lenders held validly perfected liens as of the Petition Date; (b) all of the Debtors' now owned and after-acquired real and personal property, assets and rights, of any kind or nature, wherever located, including, without limitation, contracts, property, plant, equipment, general intangibles, documents, instruments, interests in leaseholds, patents, copyrights, trademarks, trade names, and all other intellectual property, capital stock of subsidiaries, cash, and cash collateral of the Debtors (whether maintained with the Pre-petition Lenders or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise, but not including causes of action brought against the Pre-petition Lenders), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing (collectively, the "Adequate Protection Collateral").

(b) <u>Superpriority Claims</u>.  To the extent of any Diminution of Value, the Pre-petition Lenders shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by Bankruptcy Code sections 503(b) and 507(b) and otherwise (the "Superpriority Claims").  The Superpriority Claims shall, subject to the Carve-Out (as defined below), be allowed claims against each Debtor (jointly and severally) with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind, whatsoever, including without limitation, all other administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all other administrative expenses or other claims arising under any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 507(a),

507(b), or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed Superpriority Claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors. Other than the Carve-Out, no cost or expense of administration under Bankruptcy Code sections 105, 503, or 507 or otherwise, including any such costs or expense resulting from or arising after the conversion of any of these cases under Bankruptcy Code section 1112, shall be senior to, or *pari passu* with, the Superpriority Claims granted hereunder.

(c)     Pre-petition Lenders' and Pre-petition Agent's Professional Fees and Expenses. The Pre-petition Lenders and the Pre-petition Agent are entitled under the Credit Agreement to prompt reimbursement of all of their professional fees incurred in respect of their counsel and financial advisors. Consequently, as additional adequate protection, the Debtors are authorized and directed, within 20 days of submission of invoices therefore (which invoices shall be delivered to the Debtors, the United States Trustee, and any statutory committee, which shall contain a summary description of services rendered and listing of hours and services by each professional for the time period covered thereby), to pay all reasonable fees and expenses for the professionals of the Pre-petition Lenders and the Pre-petition Agent, in each case, in connection with matters relating to the subject of these Cases. None of the fees or expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Nothing contained herein shall be deemed to be a waiver by any party in interest of the right to object to the reasonableness of any such fees and expenses.

**Carve-Out**

14.     All liens and claims of the Pre-petition Lenders, irrespective of their nature or priority, shall be subject to the Carve-Out (as defined herein).  As used herein, the term "Carve-Out" shall mean (i) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees"); (ii) (a) the unpaid fees and expenses of the professionals engaged by the Debtors or any Committee, if appointed, as set forth in the Budget, prior to a Termination Event (as accrued and regardless of whether approved and unpaid or pending approval by the Bankruptcy Court), and (b) after a Termination Event, the payment of fees and expenses of the professionals engaged by the Debtors or any Committee, if appointed (as accrued and regardless of whether approved and unpaid or pending approval by the Bankruptcy Court) that are ultimately allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 330, in an aggregate amount not to exceed $250,000; and (iii) the Break-up Fee and Expense Reimbursement (each as defined in the PSA) to the extent payable under the PSA.

15.     Except as otherwise provided for herein, the Carve-Out shall not include, and Cash Collateral shall not be used for, the payment or reimbursement of any fees or disbursements of the Debtors' professionals (or any professionals of any Committee, if appointed), or any trustee appointed in these chapter 11 cases, incurred in connection with the, assertion and prosecution of, or joinder in, any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (i) commencing or prosecuting any action asserting claims pursuant to Bankruptcy Code sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against the Pre-petition Lenders with respect to the validity and extent of the

obligations hereunder or the obligations under the Pre-petition Indebtedness Documents, or the validity, extent and priority of the liens and security interests securing the obligations hereunder or the obligations under the Pre-petition Indebtedness Documents; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-petition Lenders' liens on and security interests in the post-petition collateral or Pre-petition Collateral; or (iii) preventing, hindering or delaying (whether, directly or indirectly) the Pre-petition Lenders in respect of their liens and security interests in the Adequate Protection Collateral or Pre-petition Collateral. Notwithstanding the foregoing restriction, up to an aggregate of $25,000 of Cash Collateral may be used to pay professional fees and expenses incurred by any Committee that may be appointed to investigate the extent, validity and priority of claims and liens of the Pre-petition Agent and/or the Pre-petition Lenders relating to the Pre-petition Indebtedness Documents, but not to challenge any liens or claims under Pre-petition Indebtedness Documents.

16.    The dollar amounts available to be paid under the Carve-Out shall be deemed reduced to the extent proceeds of any Pre-petition Collateral or post-petition collateral are used to pay (i) fees or expenses of any professionals arising from and after a Termination Event and (ii) any post-Petition Date retainer paid by the Debtors to any bankruptcy estate professionals. The Pre-petition Lenders and the Pre-petition Agent retain any and all rights, as a party-in-interest, to object to any claims of any professionals.

**Reporting Requirements**

17.    The Debtors shall comply with all reporting requirements under the terms and provisions of the pre-petition credit facilities. Debtors shall also provide such other reports as are reasonably requested by the Pre-petition Agent.

18.    The Debtors shall deliver to the Pre-petition Lenders and their counsel, (i) by 3:00

p.m. on each Tuesday following entry of this Interim Order, a written accounting of all cash collected during the preceding week and all expenditures of Cash Collateral. The Debtors shall immediately make available to the Pre-petition Lenders or any of their agents (including professionals) supporting documentation for all receipts and expenditures, including, but not limited to, bank statements, contracts, invoices, copies of checks and general ledgers. Failure to provide these documents and reports shall be a Termination Event as defined herein.

**Other**

19.     The Debtors shall provide (and shall continue to so provide) the Pre-petition Lenders, the Pre-petition Agent and any professional retained by the Pre-petition Lenders and the Pre-petition Agent, with reasonable access during normal business hours to (i) the Debtors' premises, management and financial advisors, (ii) any and all books, records, engineering reports, documents and information relevant to the Debtors' business operations, and (iii) any other information or report regarding the Debtors or their chapter 11 cases that the Pre-petition Lenders may from time to time request; provided, however, that in connection with complying with this paragraph, the Debtors shall not be required to waive attorney work product privilege or any other legally enforceable privilege. Failure to provide access pursuant to this paragraph with three (3) business days of a request being made by the Pre-petition Lenders shall result in an immediate default and constitute a Termination Event under the terms of this Interim Order.

20.     The entry of this Interim Order shall not prejudice or limit the rights of the Pre-petition Agent or Pre-petition Lenders or any other party in interest to seek additional relief with respect to use of Cash Collateral or for adequate protection, nor shall this Interim Order limit or otherwise alter the rights of the Debtors or other parties in interest, except to the extent specifically provided for herein. Nothing included herein shall prejudice, impair, or otherwise

affect the Pre-petition Agent or Pre-petition Lenders' rights to seek any other or supplemental relief in respect of the Debtors' bankruptcy estates, including, without limitation, any right of the Pre-petition Agent or Pre-petition Lenders to seek entry of an order, upon motion, after notice and a hearing, for relief from the automatic stay, or to contest the granting of any liens on or security interests in all or any part of the Pre-petition Collateral or to appear and be heard in respect of any other matter arising in or related to these chapter 11 cases. Furthermore, entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Pre-petition Agent or the Pre-petition Lenders may have against any third parties

21.     Nothing contained in this Interim Order or otherwise shall constitute nor be deemed to constitute, directly or indirectly, by implication or otherwise, a waiver by the Pre-petition Lenders and the Pre-petition Agent of their right to assert that the Debtors are obligated under the Pre-petition Indebtedness Documents to pay (i) the default interest rates specified therein, (ii) interest on interest, or (iii) any fees, costs and other charges specified therein.

22.     Neither the Pre-petition Collateral, the Pre-petition Agent nor the Pre-petition Lenders shall be subject to: (a) surcharge pursuant to Bankruptcy Code sections 506(c) or 105(a), or otherwise, by the Debtors, any successor to the Debtors, or any other party in interest; or (b) the equitable doctrine of marshalling by the Debtors or any other party in interest.

23.     Based on the recitals and in accordance with Bankruptcy Code section 364(e), in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacatur shall affect the validity, enforceability or priority of any of the Adequate Protection Liens or the Superpriority Claims, or any other obligation of any Debtor to the Pre-petition Agent or any Pre-petition Lender.   Notwithstanding any such modification, amendment or

vacatur, any claim granted to the Pre-petition Lenders hereunder arising before the effective date of such modification, amendment or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Pre-petition Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the Adequate Protection Liens and priorities granted herein, with respect to any such claim (including the Superpriority Claims).

24.     The Pre-petition Lenders and the Pre-petition Agent shall not (i) have liability to any third party nor shall the Pre-petition Lenders and the Pre-petition Agent be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), or owe any fiduciary duty to the Debtors, their creditors or their bankruptcy estates, and (ii) the Pre-petition Lenders' and the Pre-petition Agent's relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with any of the Debtors.

25.     The failure of the Pre-petition Lenders and the Pre-petition Agent to seek relief or otherwise exercise their rights and remedies under the Pre-petition Indebtedness Documents or this Interim Order shall not constitute a waiver of any of its rights thereunder, hereunder, or otherwise.

26.     The provisions of this order shall be binding upon and shall inure to the benefit of the Pre-petition Lenders, the Pre-petition Agent and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

27.     Unless and until the Pre-petition Obligations have been indefeasibly repaid in full, in cash, the protections afforded to the Pre-petition Lenders and the Pre-petition Agent under this Interim Order, and any actions taken pursuant thereto shall survive the entry of an order dismissing these chapter 11 cases or converting these chapter 11 cases into a case pursuant to chapter 7 of the Bankruptcy Code, and the Adequate Protection Liens in and to the post-petition collateral and the Superpriority Claims shall continue in these proceedings and in any such successor case, and the Adequate Protection Liens and Superpriority Claims shall maintain their priority as provided by this Interim Order until the Pre-petition Obligations have been indefeasibly paid in full in cash.

28.     The extent, validity, perfection and enforceability of the Pre-petition Obligations and the Pre-petition Lenders' liens on the Pre-petition Collateral are for all purposes subject to the rights of any party in interest with proper standing other than the Debtors to file a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate or otherwise challenge the Pre-petition Obligations and/or the Pre-petition Lender's Pre-petition liens upon and security interests in the Pre-petition Collateral; provided, however, that if such complaint is not filed by such parties in interest with proper standing to assert such complaint or the Committee, if any, within 45 days following the date of the entry of this Interim Order (i) the Pre-petition Obligations and the Pre-petition Lenders' security interests in and liens upon the Pre-petition Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Pre-petition Collateral to the extent provided herein, and the Pre-petition Obligations shall be allowed in the full amount specified above pursuant to Bankruptcy Code sections 502 and 506, and (ii) the acknowledgements and stipulations contained above shall be

binding on all parties in interest. Nonetheless, nothing in this Order shall be deemed to grant standing to any other party to commence any adversary proceeding or contested matter.

29.    In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Pre-petition Agent is authorized to file in the Debtors' lead Chapter 11 Case (In re Edge Petroleum Corporation, Case No, 09-20644) a single, master proof of claim for and on behalf of the Pre-petition Lenders on account of any and all of their respective claims arising under the Pre-petition Indebtedness Documents and hereunder (the "Master Proof of Claim") against each of the Debtors. Upon the filing of the Master Proof of Claim against the Debtors, the Pre-petition Agent and each Pre-petition Lender, and each of their successors and assigns, shall be deemed to have filed a proof of claim in respect of its claims against the Debtors of any type or nature whatsoever with respect to the Pre-petition Indebtedness Documents, and the claim of each Prepetition Lender shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases. The Pre-petition Agent shall not be required to amend the Master Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims, if such allocation is so asserted. The provisions of this paragraph and the Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Pre-petition Lender (or their successors in interest) to vote separately on any plan of reorganization proposed in these Chapter 11 Cases. The Pre-petition Agent shall not be required to file with the Master Proof of Claim any instruments, agreements or other documents evidencing the obligations owing by the Debtors to the Pre-petition Lenders, which instruments, agreements or other documents will be provided upon written request to counsel for the Pre-

petition Agent.  For the avoidance of doubt, the foregoing paragraph shall not confer a similar right on any other creditors.

30.     Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

Signed, this _5_ day of _October_, 2009.

_____
Richard S. Schmidt
United States Bankruptcy Judge

# # # END OF ORDER # # #

**AGREED TO AS TO FORM & SUBSTANCE:**

*Counsel for Debtors:*                    *Counsel for the Pre-petition Agent:*

**AKIN GUMP STRAUSS HAUER**              **BRACEWELL & GIULIANI LLP**
  **& FELD LLP**

_____              _____
Charles R. Gibbs                         William A. (Trey) Wood, III

## SCHEDULE 1

## INTERIM BUDGET

**Edge Petroleum Corporation**
Cash Collateral Order Budget per the 13 Week Forecast
(in thousands)

| | Actual (a) | | | | Budget During Cash Collateral Order | | | |
|---|---|---|---|---|---|---|---|---|
| | May | Jun | Jul | Aug | Sept | Oct | Nov | Dec (g) |
| **General and Administrative:** | | | | | | | | |
| Salary and Benefits (b) | 522 | 635 | 457 | 650 | 522 | 517 | 515 | 516 |
| Other (c) | 713 | 1,885 | 1,433 | 1,432 | 738 | 711 | 730 | 712 |
| | 1,235 | 2,519 | 1,890 | 2,081 | 1,260 | 1,227 | 1,245 | 1,228 |
| Lease Operating Expenses (d) | 2,571 | 3,313 | 2,287 | 1,866 | 2,215 | 2,215 | 2,215 | 2,215 |
| Capital Expenditures (e) | | | | | 907 | 1,578 | 650 | |
| Restructure Costs (c) | | | | | 1,405 | 975 | 975 | 975 |
| Other (f) | 2 | 229 | 345 | 1 | | | | |
| Total | $ 3,808 | $ 6,062 | $ 4,522 | $ 3,948 | $ 5,786 | $ 5,995 | $ 5,085 | $ 5,821 |

(a) Actual does not break out the classification between G&A and Restructuring Costs or LOE and Capital Expenditures.
    The actual monthly results do not reflect a true month end cut-offs. They are based on weekly cutoffs per the 13 week cash flow forecast.
(b) June actual includes vacation payments in salary and benefits for terminated employees.
(c) Actual includes restructuring costs. The forecast has restructuring costs seperated.
(d) Excludes ad valorem and production taxes.
(e) Excludes capitalized General and Administrative and interest expenses and updated forecast to include the Box Butler 5-5 #2.
(f) Typical represent one off payments. June represents insurance payment to Worthman and July represents payment settlement with operator.
(g) Excludes the retention bonuses forecasted to be paid in December 2009.

During the period covered by the Cash Collateral Order, the following will be paid-in-full in the normal course of business:

Ad Valorem Taxes
Production Taxes
Revenue Distributions

Cash Collateral Order v3

10/1/2009

EDGE PETROLEUM CORPORATION
BANKRUPTCY COST
MONTHLY

| | September | October | November | December |
|---|---|---|---|---|
| Edge Legal Cost | $ 225,000 | $ 225,000 | $ 225,000 | $ 225,000 |
| Bank Legal Cost | 175,000 | 175,000 | 175,000 | 175,000 |
| Creditors Committee | 150,000 | 150,000 | 150,000 | 150,000 |
| US Trustee Fee | 30,000 | | | |
| Claims/Notice Service | 400,000 | | | |
| Edge Financial Advisors | 250,000 | 250,000 | 250,000 | 250,000 |
| Bank Financial Advisors | 125,000 | 125,000 | 125,000 | 125,000 |
| Other | 25,000 | 25,000 | 25,000 | 25,000 |
| Various Experts | 25,000 | 25,000 | 25,000 | 25,000 |
| | $ 1,405,000 | $ 975,000 | $ 975,000 | $ 975,000 |

THIS IS A PRELIMINARY DRAFT . IT HAS BEEN PREPARED BASED ON PRELIMINARY INFORMATION AND ON ASSUMPTIONS.  NO ONE MAY
RELY ON THIS DRAFT . IT IS SUBJECT TO CHANGE AS ADDITIONAL INFORMATION BECOMES AVAILABLE OR IS CLARIFIED