IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| | § | Case No. 09-20644 |
| EDGE PETROLEUM CORP., et al., | § | Jointly Administered |
| | § | Chapter 11 |
| Debtors. | § | |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTION
107(b)(1) FOR ORDER AUTHORIZING THE FILING OF PROPOSED
EMPLOYEE INCENTIVE PLAN INFORMATION UNDER SEAL**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

COME NOW the above-captioned debtors and debtors in possession (the "Debtors") and file this Debtors' Motion Pursuant to Bankruptcy Code Section 107(b)(1) for Order Authorizing the Filing of Proposed Employee Incentive Plan Information Under Seal (the "Motion"). In support of this Motion, the Debtors state as follows:

## I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are section 107(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.  BACKGROUND

### A.  The Debtors' Businesses

3. On October 1, 2009 (the "Petition Date"), Edge Petroleum Corporation, a Delaware corporation ("Edge"), as well as various Edge subsidiaries, filed petitions pursuant to chapter 11 of the Bankruptcy Code with this Court. The Debtors continue to operate their businesses pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. The Debtors are independent energy companies engaged in the exploration, development, acquisition and production of natural gas, natural gas liquids and crude oil. The Debtors' operations are focused onshore in the United States, primarily in south and southeast Texas, southeast New Mexico, Mississippi, Arkansas and Louisiana. As of December 31, 2008, 83% of the Debtors' proved reserves were in Texas, 6% were in Mississippi, 6% were in New Mexico and 5% were in south Louisiana, Michigan, Alabama and Arkansas, collectively.

5. As of June 30, 2009, the Debtors reported total assets of approximately $264 million on their unaudited balance sheets, of which $43.2 million were current assets. The remaining $220.8 million in reported assets related primarily to property costs. The Debtors reported a consolidated net loss of approximately $9.4 million for the three months ending June 30, 2009 and a consolidated net loss of approximately $86.3 million for the six months ending June 30, 2009.

**B.     The Debtors' Proposed Plan of Reorganization and Related Agreements**

6.     In January 2007, the Debtors entered into a credit agreement (the "Credit Facility") with Union Bank of California as agent and issuing lender (the "Bank Agent") and other lenders party thereto (collectively and together with the Bank Agent, the "Pre-petition Lenders"). Faced with declining revenues and the need to address the near-term maturity of the Credit Facility and following an extensive pre-petition marketing effort, prior to the Petition Date, the Debtors engaged in discussions with the Pre-petition Lenders regarding a potential restructuring plan for the Debtors. After several weeks of active and arm's-length negotiations, the Debtors reached an agreement with a majority of the Pre-petition Lenders regarding the terms of a pre-arranged restructuring plan (the "Plan"), as evidenced by a certain Plan Support Agreement (the "Plan Support Agreement"). The Debtors' Plan and the Plan Support Agreement were filed by the Debtors on the Petition Date. The Debtors believe that the agreements reached with the Pre-petition Lenders and evidenced by the Plan and the Plan Support Agreement will significantly facilitate these chapter 11 cases and the Debtors' objective of preserving and enhancing value for the benefit of their stakeholders.

**C.     The Proposed Sale of Edge's Subsidiaries to PGP**

7.     On the Petition Date, the Debtors also sought Court approval of their proposed bidding procedures to effect the sale of substantially all of their assets (the "Sale Motion") to the third party who submits the highest and best offer to purchase and acquire the stock (the "Equity Interests") of Edge's subsidiaries.[1] In connection with the Sale Motion, on September 30, 2009, the Debtors and PGP Gas Supply Pool No. 3 LLC ("PGP") entered into a purchase and sale agreement (the "Purchase Agreement") whereby PGP would purchase the Equity Interests for a

---

[1] The Purchase Agreement contemplates the sale of the stock of the following entities: Edge Petroleum Exploration Company, Edge Petroleum Operating Company, Edge Petroleum Production Company, Miller Exploration Company, and Miller Oil Corporation.

base purchase price of $191 million, subject to adjustment as provided in the Purchase Agreement and also subject to higher and better offers.

8.  In connection with the Purchase Agreement, PGP has the option to employ some or all of the Debtors' employees (the "Employees"). To that end, the Debtors understand that PGP has identified a number of Employees it wishes to employ if PGP submits the highest and best bid for the Equity Interests.

9.  Further, the Debtors believe it likely that other potential purchasers may wish to employ substantially all of the Debtors' current Employees. To the extent such Employees are not employed by the Debtors at the time of the sale, such bidders may submit a materially lower bid for the Debtors' assets.

**D.  The Debtors' Pre-petition Employee Programs**

10. In late 2008, the Debtors implemented an Employee retention plan (the "Retention Plan") for all or substantially all of their Employees.[2] At the time the Retention Plan was implemented, the Debtors were experiencing significant attrition of Employees. The Retention Plan was considered and approved by Edge's board of directors.

11. Additionally, pre-petition the Debtors entered into change of control/severance agreements with all of their Employees (the "Severance Agreements"). The Severance Agreements provide for a lump-sum, cash payment if, upon the occurrence of a change of control event, an Employee is not employed by the acquiring party. Typically, payments under the Severance Agreements for non-insiders were the higher of (a) a multiple of years of service plus their target bonus or (b) a multiple of base salary plus their target bonus. Payments under the Severance Agreements for insiders were typically a blend of a multiple of base salary plus their target bonus.

---

[2] Twenty-five (25) current non-insider Employees participate in the current Retention Plan, with retention bonuses ranging from $5,000 to $50,000.

E. **The Debtors' Proposed Post-petition Employee Programs**

12. The Debtors are cognizant of the restrictions on payments to Employees imposed by recent amendments to the Bankruptcy Code. The Debtors also believe, however, that their Employees are critical to the successful completion of the sale process contemplated by their chapter 11 filings. Specifically, as noted above, if the Purchase Agreement is ultimately selected as the highest and best offer for the Equity Interests, it is anticipated that PGP will employ some of the Debtors' Employees. Furthermore, the Debtors believe that other potential purchasers may wish to employ some or all of the Debtors' Employees if they are the successful bidder. As such, an important element of a successful sale process is the continued employment of the Debtors' current Employees who have, among other things, valuable historical knowledge regarding the Debtors' operations.

13. To incentivize current Employees to remain with the Debtors during the sale process, the Debtors propose to implement the following post-petition Employee incentive plans (collectively, the "Incentive Plans"):

- Each of the Debtors' Employees who continue to be employed by the Debtors on the effective date of the Debtors' plan of reorganization (the "Effective Date")[3] will be entitled to receive an incentive bonus[4] for assisting in the successful closing of the sale.

- To the extent that an Employee is not employed by the Debtors on the Effective Date, the Debtors may, after consultation with the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), the Bank Agent and any official committee that may be appointed in these cases, reallocate such funds among the Employees.

- To the extent an Employee will not be employed by the successful bidder in a capacity and with a level of compensation and responsibility that is greater than or equal to that of his or her current employment, such Employee will be entitled to collect a severance payment (each, a

---

[3] Pursuant to the Plan, the Effective Date is to occur simultaneously with the closing of the sale of the Equity Interests, or such other sale of substantially all of the Debtors' assets pursuant to a higher and better offer.

[4] Any such incentive payment will also take into account payments made to Employees pre-petition to encourage such Employees to remain with the Debtors.

"Severance Payment"), which payment will be a function of the payment such Employee would have been entitled to received under the pre-petition Severance Agreements.

- To the extent that an Employee will be employed in a capacity and with a level of compensation and responsibility that is greater than or equal to that of his or her current employment, such Employee's Severance Payment may be allocated by the Debtors, after consultation with the U.S. Trustee, the Bank Agent and any official committee that may be appointed in this case, among the Employees.

- The aggregate cost of the Incentive Plans shall not exceed $1.8 million.

14. Attached as **Exhibit A** to the Employee Incentive Plan Motion[5] (the "Exhibit") is a list of the proposed payments to be made to the Debtors' Employees pursuant to the Incentive Plans. Payments made under the Incentive Plans would be in complete satisfaction of and in lieu of any severance, incentive, change of control, or other payments that an Employee may otherwise allegedly be due and owing under the pre-petition Retention Plan and/or the Severance Agreements.

15. The Debtors have discussed the proposed Incentive Plans extensively with the Bank Agent. The Bank Agent agrees that the Incentive Plans are important to ensure that the Employees remain with the Debtors during the sale process and, accordingly, to ensure that the value of the Debtors' assets is maximized, the Bank Agent has agreed to allow up to $1.8 million to be used to fund the Incentive Plans.[6] Absent such agreement, these funds would inure to the benefit of the Pre-petition Lenders.[7]

---

[5] Simultaneously herewith the Debtors are filing a Motion for an Order Authorizing the Debtors to Adopt and Implement Incentive Plans for Employees (the "Employee Incentive Plan Motion").

[6] Certain of the Debtors' Employees are prohibited from participating in the proposed Incentive Plans unless and until they agree to waive any administrative claims against the Debtors' estates for amounts that would otherwise be payable pursuant to the proposed Incentive Plans in the event that the Bank Agent withdraws its support. These Employees include John Elias, John Tugwell, Gary Pittman, Howard Creasey, Robert Thomas, Kirsten Hink, and Richard Parma.

[7] It is important to note that because the Debtors' proposed plan provides for a pot of cash to be available to fund administrative expense claims, priority claims, and general unsecured claims, granting the Employee Incentive Plan Motion will in no way impact the recovery available to the Debtors' unsecured creditors.

### III. RELIEF REQUESTED

16. By this Motion, the Debtors request the entry of an order pursuant to Bankruptcy Code section 107(b)(1) and Bankruptcy Rule 9018 authorizing the Debtors to file the Exhibit under seal and authorizing the Clerk of the Court to release copies of the Exhibit to the Court, the Debtors, the U.S. Trustee, the Pre-petition Lenders, and any statutory committee(s) appointed in these cases upon such parties' request. Specifically, the information the Debtors seek to protect is the list of Employees to receive payments pursuant to the proposed Employee Incentive Plan Motion and the amount of such proposed payments.

### IV. BASIS FOR RELIEF

17. Transparency in process, which is embodied in the public's common law right to inspect court records, is key to a successful reorganization and to maintain society's confidence in the integrity of the judicial system. *See, e.g., S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848-49 (5th Cir. 1993). However, the common law right of the public to inspect and copy court records is not absolute. *Fed. Savs. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987); *N. Bay Gen. Hosp., Inc. v. McNaull (In re N. Bay Gen. Hosp.)*, 404 B.R. 429, 438 (S.D. Tex. 2009) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Bankruptcy Code section 107(b) authorizes bankruptcy courts to issue orders to protect entities from potential harm caused by the disclosure of confidential or sensitive commercial information. *See N. Bay Gen. Hosp.*, 404 B.R. at 438; *Young Again Prods., Inc. v. Supplement Spot, LLC (In re Supplement Spot, LLC)*, No. 07-03019, 2009 WL 2006834, at *11 (Bankr. S.D. Tex. July 8, 2009); *In re I.G. Servs. Ltd.*, 244 B.R. 377, 388 (Bankr. W.D. Tex. 2000).

18. Specifically, Bankruptcy Code section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . .

11 U.S.C. § 107(b)(l). Further, Bankruptcy Rule 9018 states:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018. Together, Bankruptcy Code section 107(b) and Bankruptcy Rule 9018 operate to ensure that a debtor need not face a "Hobson's choice" between involuntary disclosure of vital business information and the availability of bankruptcy relief. *In re Northstar Energy, Inc.*, 315 B.R. 425, 430 (Bankr. E.D. Tex. 2004).

19. In granting relief under Bankruptcy Code section 107(b), a bankruptcy court is *required* to seal information that, while not necessarily rising to the level of a trade secret, is so critical to the operations of the debtor that "its disclosure will unfairly benefit [the debtor's] competitors." *Id.* at 429. Specifically, a court is required to protect "confidential commercial information." *Id.* at 428-29; *In re Georgetown Steel, LLC*, 306 B.R. 542, 546 (Bankr. D.S.C. 2005). "Commercial information" is defined as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Northstar*, 315 B.R. at 428-29 (quoting *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994)). The purpose of section 107(b) and Rule 9018 is to protect debtors from disclosure requirements that "could reasonably be expected to cause the [debtor] commercial injury." *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).

20. The Employees affected by public disclosure of the information contained in the Exhibit are highly skilled, experienced, and desirable employees. If the Exhibit is required to be publicly filed, the Debtors' competitors will have unfettered access to sensitive information regarding these Employees, and such competitors will be in a far better position to recruit these Employees away from the Debtors. Given the importance of these Employees to the successful sale of the Debtors' assets, such an occurrence would be a death knell to the Debtors and would unfairly benefit the Debtors' competitors as contemplated by the *Northstar* court. Further, the public disclosure of the information contained in the Exhibit would likely cause discontent among other employees of the Debtors.

21. Several bankruptcy courts have found that lists of key employees and the specific payments or benefits that such employees would receive under a proposed key employee retention plan constitute confidential commercial information as stated in Bankruptcy Code section 107(b). *See Northstar,* 315 B.R. at 429 (citing *Georgetown Steel,* 306 B.R. at 547). *See also In re Allied Holdings, Inc.,* 337 B.R. 716, 718 n.1 (Bankr. N.D. Ga. 2005).

V. **THE DEBTORS SATISFY BANKRUPTCY RULE 6003**

22. Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to pay a pre-petition claim. Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors' estates for the reasons set forth above, and the Debtors accordingly submit that Bankruptcy Rule 6003 has been satisfied.

VI. **WAIVER OF BANKRUPTCY RULE 6004**

23. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 10-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## VII. <u>NOTICE</u>

24. No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (iii) the Bank Agent; (iv) the Securities and Exchange Commission; (v) the Office of the United States Attorney for the Southern District of Texas; (vi) the Internal Revenue Service; (vii) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and such other government agencies to the extent required by the Bankruptcy Rules and Bankruptcy Local Rules. The Debtors submit that no other or further notice need be provided.

## VIII. <u>NO PREVIOUS REQUEST</u>

25. No previous request for the relief sought herein has been made to this or any other Court.

## IX. <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to file the Exhibit under seal; and (b) granting such other and further relief as the Court deems appropriate.

Dated: November 24, 2009

        Respectfully submitted,

        **AKIN GUMP STRAUSS HAUER & FELD LLP**

        By: /s/ *Sarah Link Schultz*
        Charles R. Gibbs (SBN 07846300; Fed ID 177)
        Sarah Link Schultz (SBN 24033047; Fed ID 30555)
        Yewande Akinwolemiwa (SBN 24056633; Fed ID 909757)
        1700 Pacific Avenue, Suite 4100
        Dallas, TX 75201-4675
        Telephone: 214.969.2800
        Facsimile: 214.969.4343

        -and-

        Shelby A. Jordan (SBN 11016700; Fed ID 2195)
        Nathaniel Peter Holzer (SBN 00793971; Fed ID 21503)
        Harlin C. Womble (SBN 21880300; Fed. ID 8959)
        **JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**
        500 North Shoreline Boulevard, Suite 900
        Corpus Christi, Texas 78471
        Telephone: 361.884.5678
        Facsimile: 361.888.5555

        **ATTORNEYS FOR EDGE PETROLEUM CORPORATION, ET AL.**

# **EXHIBIT A**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In Re:** | § § | **Case No. 09-20644** |
| **EDGE PETROLEUM CORP., et al.,** | § § | **Jointly Administered** |
| | § | **Chapter 11** |
| **Debtors.** | § | |

## ORDER AUTHORIZING CERTAIN DOCUMENTS TO BE FILED UNDER SEAL
### (Docket No. ___)

Upon the Debtors' Motion Pursuant to Bankruptcy Code 107(b)(1) for Order Authorizing the Filing of Proposed Employee Incentive Plan Information Under Seal (the "Motion") filed by the above-captioned debtors and debtors in possession (the "Debtors"), and the Court having jurisdiction to consider the Motion, having heard the evidence and statements of counsel regarding the Motion, and finding that no further notice is needed, it is therefore

**ORDERED**, that the Motion is GRANTED; and it is further

**ORDERED**, all capitalized terms not defined herein shall have the meaning given to them in the Motion; and it is further

**ORDERED**, the Clerk of the Court shall seal the Exhibit; and it is further

**ORDERED**, that the Clerk of the Court is authorized to release copies of the Exhibit to the Court, the Debtors, the United States Trustee, the Debtors' pre-petition lenders, and any official committee; and it is further

**ORDERED**, that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

DATED: _____, 2009.

_____
**UNITED STATES BANKRUPTCY JUDGE**

044232.0004 WEST 6389648 v3